# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
NEW YORK MICROSCOPE COMPANY, INC.,

                            Plaintiff,

        -against-            Case No.:
                            CV-23-3718
                            (JMA)(ARL)

BYERS HOLDING GROUP, LLC, et al.,

                            Defendant.
-------------------------------------------X
                            DATE:  April 20, 2026
                            TIME:  10:00 a.m.

        REMOTE DEPOSITION of the Defendant,

ZACHARY BYERS, taken by the Plaintiff,

pursuant to a notice, held remotely via

Zoom Videoconference, before Suzanne

Pastor, a Notary Public of the State of New

York.

Zachary Byers
April 20, 2026

Page 2

A P P E A R A N C E S:
(All appearances via Zoom Videoconference)

MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP
Attorneys for the Plaintiff
        190 Willis Avenue
        Mineola, New York 11501
BY:    STEPHEN W. LIVINGSTON, ESQ.
        516.747.0300, Ext. 245
        slivingston@meltzerlippe.com


THE MILUN LAW
Attorneys for the Defendant and Witness
        20 Commerce Drive, Suite 135
        Cranford, New Jersey 07016
BY:    RYAN MILUN, ESQ.
        862.702.5010
        ryan.milun@milunlaw.com




ALSO PRESENT:
  OSSNAT KOENIG


            *       *       *

Page 3

THE REPORTER:  Good morning. The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room and that I will be reporting this deposition remotely.

They further acknowledge that in lieu of an oath administered in person, I will place the witness under penalty of perjury.

The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.  Please indicate your agreement by stating your name and your agreement on the record.

MR. LIVINGSTON:  On behalf of plaintiff, my name is Stephen Livingston from Meltzer Lippe Goldstein & Breitstone, and we agree.

MR. MILUN:  Ryan Milun, Milun Law Firm, we agree.

THE REPORTER:  Mr. Byers, please raise your right hand.

Do you swear or affirm that the

Page 4

testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Yes, I do.

THE REPORTER:  Thank you. You are all set, counsel.

MR. LIVINGSTON:  Thank you.

EXAMINATION

BY MR. LIVINGSTON:

Q.    Good morning, Mr. Byers.  My name is Stephen Livingston, I am an attorney for the plaintiff.

Just before we start I just want to go over a few ground rules.  Have you ever been deposed before, sir?

A.    No, I haven't.

Q.    So since this is your first deposition, I'll just go through a few basic rules.  I'll just ask that you allow me to get my question out before speaking, and then also you might want to pause for your own attorney who may object after the question is asked.  And I'll just say that unless your attorney instructs you not to answer, even if he objects you can answer

Page 5

the rest of the question.  Is that understood?

A.    Yes.

Q.    The other thing is that your response will need to be verbalized so that the court reporter can take down your response.  Is that understood?

A.    I'm sorry, what was that?

Q.    When you respond to the questions, you have to verbalize your response.  Nods or things like --

A.    Oh, I apologize, yes.  That makes sense.

Q.    If you need to take a break, just let me know.  As long as there's no question pending we can take a break.

With regards to my questions, I'll just ask that if you don't understand my question, please ask me and I will rephrase it and hopefully it will be understood.  But if you do respond I'll assume that you understood the question. Is that understood?

A.    Yes.  Yes, that makes sense.

Q.    Since we're doing this

Zachary Byers
April 20, 2026

Page 230

says, "Gotcha, and I think we all know at this point what's on paper, et cetera. So it makes sense to move to keep you out of this and let Steve pounce on her, LOL."

Did you think that Mr. Rouimi was somebody who would be a tough negotiator to Ms. Koenig -- Mr. Luk, sorry. Steve Luk?

A. Honestly, I really don't know Steve Luk. My understanding would be that they had a relationship before this contract. So I think it was more about the personal connection between the two. Not personal, but, you know, some sort of prior connection, whether it's business, other business dealings they've had.

Q. And you write, "Our plan I believe is to show her a bill from USA Medical for estimated 300,000 in financing, 150,000 bill from Byers Holding Group for services she was supposed to perform but we performed on her behalf. And oh, by the way, you are at breach so either take 135K or the number will keep going down." Do you see that?

Page 231

A. Yes.

Q. When did you come up with that plan?

A. I don't believe that I came up with this plan on my own. I think that this is conversations with USA Medical, with Andy as well trying to get these resolved.

Q. What was the 150,000 from Byers for services she was supposed to perform?

A. Reviewing our contract with New York Microscope, we felt we were handling a large portion of what she was supposed to be doing in the contract.

Q. And he writes, "Yes, I think the plan is perfect."

I just want to show you what I have marked as Exhibit 28.

(Whereupon, 1/22/23 USA Medical Supply Invoice was marked as Plaintiff's Exhibit 28 for identification as of this date by the Reporter.)

Q. This is an invoice from USA Medical Supply to Byers Holding. It looks

Page 232

like it was created -- it says created January 22, 2023, and it has an invoice for $300,000 for financing for entire contract. Corrugated boxes for 74,000, and then it says "fulmillment (pack) 185,000," and then "transportation to fulmillment warehouse (freight), 256,000," totalling 815,000.

Was this the invoice that was created in response to your text message?

A. This is the invoice from USA Medical to us for these additional costs.

Q. Was this invoice actually created on January 22 or was it March 10 when you asked him to create the invoice?

A. I don't believe this was created on January 22nd. But I don't know for certain. That would have to be asked to USA Medical.

Q. Do you have any documents showing the transmission of this invoice from USA Medical to Byers?

A. Not at January 22, no.

Q. Would there be an e-mail transmittal of this invoice?

A. Yeah, yeah. It was closer to

Page 233

the date in the text message, from what I recall.

Q. March 10, 2023?

A. Yes, correct.

MR. LIVINGSTON: I'm going to call for the production of that e-mail as it was not produced.

Q. Is there any reason why you didn't produce these e-mails with USA Medical and yourself?

A. I was under the intention -- I thought we produced all the e-mails that we had. I'll double-check. I know you've noted a few. We will go back. You can also ask USA Medical to produce any e-mails that they sent.

Q. Do you know why they backdated the invoice?

A. I don't. Probably just tied to when the events occurred.

Q. I'm going to go back to Exhibit 18. There's a text message from you on March 13, 2023, it says, "For your reference, I sent this to John tonight. Hi, John. Please know that due to