`

EUGENE KILLIAN, JR*

DIMITRI TERESH*

VIRGINIA A. NAIROOZ*



# THE KILLIAN FIRM, P. C.

ATTORNEYS AT LAW

*MEMBER NJ & NY BAR

May 13, 2026

**VIA ECF**

Hon. Joan M. Azrack, U.S.D.J.

United States District Court, Eastern District of New York

Long Island Courthouse

100 Federal Plaza

Central Islip, New York 11722

**Re:    New York Microscope Company, Inc. v. Byers Holding Group, LLC and USA Capital Fund, LLC d/b/a USA Medical Supply**

Docket No. 23-cv-03718 JMA-ARL

Dear Judge Azrack:

This firm, together with The Milun Law Firm, P.C., represents the defendants, Byers Holding Group, LLC ("Byers") and USA Capital Fund, LLC d/b/a USA Medical Supply ("USA Medical"), in this action. We are writing this correspondence to formally request a pre-motion conference on behalf of USA Medical to request permission to file a motion for summary judgment as to all of plaintiff's claims.

This action primarily concerns a contract between Byers and Plaintiff New York Microscope Company, Inc. ("NYMC") for the supply of Personal Protective Equipment ("PPE") to the Indian Health Services ("IHS").  According to the signed contract, NYMC was to be the "seller" of the PPE that Byers was to delivery to IHS as part of a solicitation for bids issued from IHS.  Byers won the contract with IHS and contracted with NYMC to assist in supplying the PPE. Importantly, USA Medical never entered into any agreement with NYMC.

Section 1.1 of the contract with NYMC specifically notes that Byers is "purchasing product from NYMC." Although the contract required NYMC to supply the product to Byers, NYMC never had a contract or access to PPE to supply product – that was performed by USA Medical.

Under Section 2 of the contract, NYMC was required to "thoroughly review all product and delivery specifications and provide Goods which only conform to the product specifications in the Solicitation and Appendix A."  NYMC had no product and no inspections that occurred at any time; rather, it was USA Medical that performed this requirement.

Section 3.1 of the contract, entitled "Delivery" required delivery to the Government on November 28, 2022 and that delivery was to be provided by "Seller and its third-party logistics services."  NYMC did not have or use a third-party logistics service to assist in the delivery of the

TINDALL EXECUTIVE SUITES, 107 TINDALL ROAD, MIDDLETOWN NJ 07748 TEL: 732-912-2100

48 WALL STREET, 11TH FLOOR, NEW YORK NY 10005 TEL: 212-537-3866

WEBSITE: http://www.tkfpc.com

Hon. Joan M. Azrack, U.S.D.J.
May 13, 2026
Page 2

product – once again, those services were secured by USA Medical

Section 3.2 provides that NYMC "shall be responsible for **all loading costs and provide equipment and labor suited for delivery** of the Goods to the Delivery Point. Seller must provide proof of delivery to Company within 24 hours of delivery" (emphasis added). NYMC never provided the required proof of delivery, indeed it could not, as it never actually had any product to deliver -again, USA Medical secured and delivered the product. Further, the shipment of goods included significant additional costs that NYMC is responsible for per the contract.

Section 7.1 "Payment Terms" notes that "The payment of $585,000 shall be paid to New York Microscope, Inc,. not later than three business days after Byers Holding Group receives the wire transfer from USA Medical Supply in accordance with the Payment Transfer Agreement between USA Medical Supply Company, Inc. and Byers Holding Group, LLC."

In order to fulfill the contract for the PPE, the costs of the IHS contract, approximately $3.9 million, needed to be financed. USA Medical provided the mechanisms to finance the purchase, and because of this, Byers and USA Medical entered into an Assignment Agreement. Importantly, USA Medical and Byers had originally sought permission from IHS to have them pay the contract amount to USA Medical directly – as the financier – but IHS refused since the contract was awarded to Byers, and thus Byers was the entity that IHS was obligated to pay. The Assignment Agreement, therefore, was a necessary work around to the IHS payment issues. In around November 2022, the Assignment Agreement was amended to require the payment from IHS to go to a company called PremPro, LLC, which was the actual entity financing the contract. Accordingly, as soon as any payment was received by Byers from IHS, Byers was required to immediately transfer those funds to PremPro to satisfy its obligations under the assignment.

In around March 2023, Byers received an invoice from USA Medical – the actual supplier of the PPE and the actual party that performed the logistics that NYMC had contracted with Byers to perform – and the invoice included significant additional costs that were incurred in connection with the financing (described above), packaging, and distribution of the PPE – in other words the fulfillment costs. The PPE was originally stored at USA Medical in 100 items per box, but the IHS contract actually required the PPE to be delivered in 65 items per box. Therefore, the PPE had to be removed from the original storage, repackaged at a fulfillment center and then transferred to a shipping center for ultimately delivery to IHS. The costs to perform this additional fulfillment work included the $300,000 in costs for the financing of the contract; $74,207.13 for 65,000 Corrugated Boxes to pack the PPE for shipment; $185,000 for the fulfillment (packing) of the boxes; and $256,536.25 for the transportation of the PPE (freight) from the fulfillment center to the original shipping location before the goods were ultimately shipped to IHS. In total, the invoice from USA Medical was for **$815,743.38**. Although Byers was the entity that received the USA Medical invoice, the costs included in that invoice were the sole responsibility of NYMC – per Section 3.2 of the Byers/NYMC contract.

In this action, NYMC has asserted two claims against USA Medical: (1) Tortious Interference with a Contract; and (2) Conversion. Each of these claims should be dismissed. As to the tortious interference claim, in order to prevail, NYMC must prove: (1) a valid contract between plaintiff and a third party; (2) defendant had knowledge of the contract; (3) defendant's intentional procurement of the third party's breach of the contract without justification; (4) an



Hon. Joan M. Azrack, U.S.D.J.
May 13, 2026
Page 3

actual breach of the contract; and (5) damages. <u>Finley v. Giacobbe</u>, 79 F.3d 1285, 1294 (2nd Cir. 1996).  Here, NYMC cannot prove elements (3), (4), and (5), and thus its claims must fail.  As an initial matter, USA Medical was pivotal to Byers performance of the contract with IHS, including providing the PPE to be sold to IHS as well as the necessary financing and fulfillment of the contract – all of which were the responsibility of NYMC according to the Byers/NYMC agreement!  Second, as a result of the financing and fulfillment, there were increased costs incurred, as noted above, and these additional costs were the sole responsibility of NYMC.  The increased costs were more than any amounts NYMC claims it's owed under the Byers/NYMC agreement, and thus neither USA Medical nor Byers is responsible to pay NYMC any amount under the contract until the increased cost issue is resolved.  Accordingly, there was no intentional interference by USA Medical, no actual breach of the contract by Byers, and actual no damages suffered by NYMC.  The mere fact that USA Medical continues to hold onto funds that NYMC claims it is owed under the contract, when NYMC is obligated by that same contract to pay USA Medical the increased fulfillment costs, cannot support a tortious interference claim.

To succeed on a conversion claim, a plaintiff must prove: (1) ownership of the property in question; (2) the defendant exercised unauthorized control over the property; and (3) defendant had no legal justification for their actions. <u>Republic of Haiti v. Duvalier</u>, 211 AD2d 379, 384 (1st Dept. 1995); <u>Hillcrest Homes, LLC v. Albion Mobile Homes, Inc.</u>, 117 NYS2d 755 (4th Dept 2014).  Here, NYMC does not have any ownership interest to the $585,000 claimed, as it is merely a "receivable" under a contract – assuming NYMC would have complied with the terms therefore (including paying the required fulfillment costs).  Moreover, because USA Medical is owed more than what is allegedly owed to NYMC under the Byers/NYMC contract, NYMC cannot prove that USA Medical's "control" over the $585,000 is unauthorized, and/or without legal justification.  To the contrary, USA Medical has a valid justification to hold the funds; indeed, it would not make any sense for USA Medical to release $585,000 to NYMC only to thereafter have to chase NYMC for the payment of the $815,000+ in fulfillment costs owed. Finally, NYMC's conversion claim is improper because what NYMC is essentially alleging are rights under a contract and there are "no independent facts alleged giving rise to tort liability" on the part of USA Medical. See <u>Kopel v. Bandwidth Tech. Corp.</u>, 56 AD3d 320 (1st Dept. 2012).

Based on the above, USA Medical respectfully requests a premotion conference and/or permission to file a motion for summary judgment dismissing all of NYMC's claims.

Respectfully submitted,
**THE KILLIAN FIRM, P.C.**


By:    ___/s/ Dimitri Teresh___
Dimitri Teresh, Esq.
dteresh@tkfpc.com

*Attorneys for Defendants Byers Holding Group, LLC and USA Capital Fund, LLC d/b/a USA Medical Supply*

