**ML Meltzer Lippe**

**MELTZER LIPPE GOLDSTEIN & BREITSTONE, LLP**
190 Willis Avenue, Mineola, NY 11501 • T. 516.747.0300
www.meltzerlippe.com

Stephen W. Livingston, Esq.
(516) 470-0141
SLivingston@meltzerlippe.com

July 2, 2026

<u>Via ECF</u>

Hon. Joan M. Azrack, U.S.D.J.
United States District Court, Eastern District of New York
Long Island Courthouse, 100 Federal Plaza
Central Islip, New York 11722

> **Re:    New York Microscope Company, Inc. v.**
> **Byers Holding Group LLC, et al., Case No. 23-cv-03718-JMA-ARL**

Dear Judge Azrack:

We represent plaintiff New York Microscope Company, Inc. ("NYMC") and oppose defendant Byers Holding Group, LLC's ("Byers") request for leave to move for summary judgment on NYMC's contract and quasi-contract claims. Leave should be denied because the proposed motion turns on disputed contract interpretation and a purported $815,000 "offset" contradicted by Byers's own documents and testimony. Summary judgment is unavailable where, as here, the agreement is ambiguous and material facts require credibility determinations and inferences in NYMC's favor. *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 115 (2d Cir. 1994); *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

**I. The structure of the transaction.** This case arises from a brokered government procurement in which NYMC was part of the team that assembled the winning bid proposal while all parties understood USA Medical (not NYMC) would supply the isolation gowns. The proposed summary judgment motion depends upon ignoring both the structure of the transaction and the parties' subsequent course of performance.

The Indian Health Services ("IHS") solicited bids for 4.5 million isolation gowns through a procurement limited to American Indian-owned businesses. Byers qualified to bid but had no product or supplier. Accordingly, its teaming partner and agent, John Rhoden of Captura Advisor, contacted NYMC seeking a quote for "my bid on a US Gov't contract for [IHS]." Over the ensuing weeks, NYMC's principal, Ossnat Koenig, supplied the essential components that Byers lacked to submit a responsive bid. Specifically, NYMC arranged for a domestic manufacture (USA Medical through its affiliate Three Zones), provided pricing that included the bid team's commission (including Byers' commission), supplied specifications for all three gown levels (CLIN 1, 2, and 3), furnished FDA registration materials, packaging photographs, shelf-life and case-count details, and coordinated the submission of product samples to IHS. All of this information, supplied by NYMC, was submitted to IHS by Byers as part of its bid proposal. The Government's sample submission form identified "New York Microscope Company" as the company submitting the samples and identified "Three Zones, LLC" as the manufacturer. Ms. Koenig likewise disclosed to Byers that the manufacturer was "aka USA Medical Supply." Thus, before the contract was ever awarded, the parties understood that USA

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**

Hon. Joan M. Azrack, U.S.D.J.
July 2, 2026
Page 2

Medical/Three Zones, not NYMC, would manufacture and supply the gowns.

On the strength of that proposal, IHS awarded Byers a $3,885,000 contract. The parties then executed a series of interrelated agreements that, when read together, confirm that USA Medical, not NYMC, was to supply the gowns. First, on September 25, 2022, Byers and NYMC entered into an agreement (the "Agreement"), drafted by Byers' agent and partner, John Rhoden. Rather than establishing a purchase price for goods, the Agreement obligated Byers to pay NYMC a flat fee of $585,000, irrespective of the number of gowns supplied, and provided that "[Byers] is not required to pay any interest or fees," which are hallmarks of a brokerage commission rather than a sales contract. The Agreement also provided that NYMC would be paid only after Byers received funds from USA Medical pursuant to the "Payment Transfer Agreement between USA Medical[] and Byers[]" and expressly referenced the accompanying Purchase Order between Byers and USA Medical. Those provisions make sense only if USA Medical (not NYMC) was the supplier. Consistent with that understanding, Byers issued a Purchase Order to USA Medical for all 4.5 million gowns for $2,925,000, assigned its rights under the IHS contract to USA Medical pursuant to a September 29, 2022 Buyer Assignment Agreement, and later redirected payment to Prem Pro, LLC through an addendum. After IHS paid Byers the full contract amount, Byers retained the commission negotiated by Ms. Koenig, remitted the balance to Prem Pro, LLC, and paid NYMC nothing.

The transaction documents and the parties' conduct thus establish that USA Medical was to perform as the supplier while NYMC served as the broker. Byers' proposed motion instead asks the Court to elevate the isolated use of the word "Seller" over the remainder of the Agreement, the related transaction documents, and the parties' undisputed course of performance. At a minimum, those competing interpretations present questions of contractual intent and course of performance that cannot be resolved on summary judgment.

**II. Byers's own conduct establishes that USA Medical was the supplier and NYMC the broker.**
Byers's motion seizes on the label "Seller" in the Agreement to argue that NYMC was responsible for manufacturing, inspecting, and shipping the gowns. But that reading cannot be reconciled with the Agreement as a whole or the parties' conduct. The Agreement expressly references the Purchase Order and Payment Transfer Agreement with USA Medical, and Byers thereafter issued its Purchase Order to USA Medical for the entire supply, executed a Buyer Assignment Agreement and addendum directly with USA Medical, and dealt exclusively with USA Medical's principal, Andy Fink, regarding delivery and invoicing. Byers's IHS bid likewise identified USA Medical's affiliate, Three Zones, as the manufacturer and included a Make PPE in America Act compliance affidavit executed by USA Medical and Three Zones (not NYMC). Byers' suggestion that it did not know it was dealing with USA Medical is belied by its own signed documents and, at a minimum, presents a credibility issue for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Tellingly, Byers never contacted NYMC regarding any alleged failure to supply the gowns, admitting it lacked Ms. Koenig's email address and telephone number and did not know "where Ossie was on any of this." The parties' course of performance is "the most persuasive evidence of the agreed intention of the parties," *Fed. Ins. Co. v. Americas Ins. Co.*, 258 A.D.2d 39, 44 (1st Dep't 1999), and where, as here, it supports competing interpretations, contractual intent must be determined by extrinsic evidence, precluding summary judgment. *Gulf Ins. Co. v. Transatlantic Reinsurance Co.*, 69 A.D.3d 71, 85 (1st Dep't 2009); *Suburban Tool & Die Co. v. Century Mold Co.*, 78 A.D.3d 1530, 1531 (4th Dep't 2010). Any

4935-6297-4138, v. 1

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**

Hon. Joan M. Azrack, U.S.D.J.
July 2, 2026
Page 3

remaining ambiguity must also be construed against Byers because its own agent and partner, John Rhoden, drafted the Agreement. *Turner Press, Inc. v. Gould*, 76 A.D.2d 906, 906-07 (2d Dep't 1980).

**III. NYMC performed even under Byers's reading.** Even accepting Byers's premise that NYMC was the "Seller," NYMC satisfied any obligation by procuring USA Medical to furnish all 4.5 million gowns, which IHS accepted and paid for. A corporate supplier need not perform personally absent a personal-services contract or confidential relationship, *Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 486-487 (2006), and whether a party substantially performed is a fact question for trial *F. Garofalo Elec. Co. v. New York Univ.*, 300 A.D.2d 186, 231 (1st Dep't 2002).

**IV. The $815,000 "offset" is contractually baseless and pretextual.** Byers and USA Medical contend that procurement, repackaging, and freight were "additional" costs because the gowns had to be boxed in quantities of 70 per box. However, 70 gowns per box was not an amendment; it was the IHS's requirement from the outset. The IHS contract specified "(70 gowns per case)" for every level of gown and the purchase order between Byers and USA Medical fixed a flat fee of $2,925,000 for USA Medical to supply and ship the gowns "in accordance with" the IHS contract, expressly including shipping and listing "Other Cost" as "N/A". USA Medical thus agreed to package the gowns 70 per box and deliver them for that fixed price. The financing, repackaging, and freight in the $815,000 invoice were not new obligations but instead constitute the very performance USA Medical had already priced. Byers owed no financing charge or extra shipping cost, and nothing in the Agreement shifts those costs to NYMC; Section 3.2 covers only "loading costs" and delivery labor, and Section 7.2 bars any "interest or fees".

The invoice is also a fabrication. Byers asked Fink in March 2023 to generate a $385,000 invoice for "additional costs" to add "context"; though invoice cites a January 22, 2023 creation date, its reference number is dated March 2023, and Byers admitted he did not believe it was created in January. The plan was to present NYMC a high figure for additional costs to intimidate Koenig to "sign[] off on the release," after which Byers offered a fraction of NYMC's commission ($200,000). A jury could find the offset was manufactured to force NYMC to discount its commission. At a minimum, the validity of the same-contract offset presents a factual dispute that precludes summary judgment. *Enrico & Sons Contracting, Inc. v. Bridgemarket Assocs.*, 252 A.D.2d 429, 430 (1st Dep't 1998).

**V. Byers cannot invoke a payment condition it defeated.** A party may not rely on the non-occurrence of a condition precedent it prevented. *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of New York*, 28 N.Y.2d 101, 106 (1971). Byers received the full $3,885,000, withheld its own commission, transferred the remaining funds to Prem Pro, and never demanded the predicate wire for NYMC's payment from Prem Pro. Whether Byers frustrated the condition is a fact question for the jury. *Fairway Prime Est. Mgmt., LLC v. First Am. Int'l Bank*, 99 A.D.3d 554, 558 (2d Dep't 2012).

**VI. The quasi-contract claims survive.** Because Byers disputes the Agreement's scope, NYMC may plead unjust enrichment and quantum meruit in the alternative; Byers's insistence that it owes nothing merely confirms that fact issues remain. *First Class Concrete Corp. v. Rosenblum*, 167 A.D.3d 989, 991 (2d Dep't 2018).

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**

Hon. Joan M. Azrack, U.S.D.J.
July 2, 2026
Page 4

For these reasons, NYMC respectfully requests that the Court deny Byers leave to move for summary judgment.

Respectfully submitted,
*/s/ **Stephen W. Livingston***
Stephen W. Livingston, Esq.

cc:        All Counsel of Record via ECF

4935-6297-4138, v. 1